UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALI M. MUTHANA,

        Plaintiff,

v.                                    Case No. 2:05-cv-208
                                        HON. ROBERT HOLMES BELL

BADAWI ABDELLATIF,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Ali M. Muthana, an inmate currently confined at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendant Dr. Badawi Abdellatif.  Plaintiff alleges in his complaint that he was diagnosed with H. Pylori infection and bleeding from his large intestine on September 15, 2002, while confined at the Marquette Branch Prison (MBP).  Because of the diagnosis, Dr. McConnell prescribed Amoxicillin, Amoxil, Flagal, Swearth-trimeter, Bactrim DS, Dismith pink, and Zantac.  Plaintiff also was placed on a special diet.

On June 11, 2004, Plaintiff was transferred to LMF.  Plaintiff was seen by Defendant Abdellatif on June 17, 2004.  Defendant refused to continue Plaintiff's prescribed treatment.  On September 16, 2004, Defendant performed an examination of Plaintiff's rectum and the tests showed "blood positive."  However, Defendant seemingly disregarded these results and did not prescribe any follow-up treatment.  Moreover, Plaintiff claims that doctors at Marquette General Hospital had

ordered a colonoscopy and a cystoscopy in April of 2003, but that Defendant refused to allow Plaintiff to have such tests.

On January 20, 2005, Plaintiff suffered from severe chest pain and vomited blood. In addition, Plaintiff's stool was black and tarry, an indication that he had blood in his stool. Plaintiff was taken to Munising Memorial Hospital, and subsequently to Marquette General Hospital (MGH). The doctor at MGH stated that he could not provide adequate treatment without a colonoscopy, which had been previously ordered. The doctor again ordered that a colonoscopy be performed. The doctor further noted that Plaintiff's blood pressure was elevated. Plaintiff states that Defendant has continuously refused to provide him with appropriate treatment for his "H-pylori" and that doctors at MGH told him that his condition, if left untreated, could lead to cancer. Plaintiff seeks damages and injunctive relief.

Presently before the Court is Defendant's Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and/or Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The

- 2 -

nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff claims that Defendant violated his rights under the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the

inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 2004 WL 2792016, at *7 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 2004 WL 2792016, at *6, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or

> omissions sufficiently harmful to evidence deliberate indifference to
> serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted).  Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim.  *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996).  This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering.  *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. April 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."  *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).  Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also*, *Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2 (6th Cir. April 27, 2001); *Jones v. Martin*, 5 Fed. Appx. 434, *cert. denied*, 534 U.S. 833 (2001); *Williams v. Mattson*, No. 99-1796, 2000 WL 924145, at *1 (6th Cir. June 28, 2000); *Davis v. Ulep*, No. 97-2124, 1999 WL 98390, at *1 (6th Cir. Jan. 29, 1999); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, at * 4 (6th Cir. July 2, 1997); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at * 2 (6th Cir. April 4, 1997).

In the brief in support of the motion for summary judgment, Defendant states that a review of the medical record reveals multiple instances where Defendant Abdellatif either physically

examined Plaintiff, followed up on Plaintiff's lab values and test results, or reviewed and commented

on Plaintiff's medical records, which shows that Defendant was not deliberately indifferent to a

serious medical need.  A review of Plaintiff's medical record, which is attached to Defendant's brief

in support of the motion for summary judgment, reveals the following:

| | |
|---|---|
| 6/15/04 | Defendant performed a physical examination, noting Plaintiff's complaint of chronic left lower quadrant pain of years duration. Plaintiff's weight was recorded as 181 pounds.  Defendant further noted that Plaintiff had multiple investigations, all of which were normal.   Defendant ordered Zantac for Plaintiff's complaint of chronic ill defined abdominal pain.  (Exhibit B, p. 772.) |
| 6/18/04 | Defendant noted that Plaintiff's old file had been reviewed and that Plaintiff had "normal US and IVP also has a normal CT abdomen and pelvis on 9/18/2002, bowels were also normal during same study. Based on this, Defendant determined that Plaintiff did not need snack bags.  (Exhibit B, p. 770.) |
| 6/29/2004 | Note summary indicating that Plaintiff had been referred by the R.N. for "same old LLQ [left lower quadrant] pain, says has vomiting diarrhea and upset stomach also left leg rash with itching." Defendant observed that Plaintiff was "comfortable not pale and no cervical Lns [lymph nodes], abd. soft and lax with no organs felt, has dry area over left leg laterally with some redness." Defendant ordered a stool test to check for H. pylori, and ordered Mycolog and Nystatin for use on Plaintiff's left leg rash.  (Exhibit B, p. 760.) |
| 7/9/04 | Note indicating that lab results were negative for H. pylori antigen in stool.  (Exhibit B, p. 754.) |
| 7/9/04 | Note summary indicating that Plaintiff was complaining of same LLQ pain and leg rash.  Defendant notes that he spoke with Plaintiff regarding his symptoms and test results, and ordered Lidex cream for Plaintiff's leg rash.  (Exhibit B, p. 752.) |
| 7/30/04 | Progress note by Defendant stating, "Referred by R.N. for same abdominal pain that he had for years, going to the back with no new changes, while I was discussing that H. pylori test in the stool is the accurate test compared to the blood test, he didn't like that and walked out of the room."  (Exhibit B, p. 745.) |

| | |
|---|---|
| 9/7/04 | Note summary by Defendant indicating that Plaintiff had been referred by the R.N. for "same old abd pain," as well as suprapubic pain with occasional frequency and burning on urination. Plaintiff's weight was recorded as 172 pounds. Defendant ordered a urinalysis be performed. (Exhibit B, p. 729-730.) |
| 9/13/04 | Progress note by Defendant noting normal urinalysis results. (Exhibit B, p. 723.) |
| 9/16/04 | Note summary by Defendant indicating that Plaintiff had been referred by the R.N. for continued abdominal pain and passing fresh blood in his stool. Defendant observed, "Bp sitting 151/83 and standing 177/98 with pulse at 70 sitting and 80 standing, not pale abdomen soft and lax no organs felt, rectal exam with small hemorrhoid no masses or swellings, little brown stool positive for blood." Defendant ordered a stool test for occult blood to be performed in one week. (Exhibit B, p. 720-721.) |
| 9/30/04 | Progress note by Defendant noting that stool test was positive for occult blood. (Exhibit B, p. 712.) |
| 10/1/04 | Note summary by Defendant indicating that a H. pylori test would be scheduled for approximately 10/5/2004. (Exhibit B, p. 709-710.) |
| 10/14/04 | Progress note by Defendant indicating that Plaintiff's stool tested negative for H. pylori. (Exhibit B, p. 697.) |
| 10/19/04 | Progress note by Defendant noting that Plaintiff refused his Zantac on two occasions. (Exhibit B, p. 694.) |
| 10/20/04 | Physical examination by Defendant for LLQ pain, no abnormal results. Defendant ordered Mycolog, Nystatin, Lidex and Fluocinonide. (Exhibit B, p. 692-693.) |
| 11/10/04 | Zantac reordered by Defendant. (Exhibit B, p. 686-687.) |
| 11/16/04 | Physical examination by Defendant for LLQ pain, no abnormal results. (Exhibit B, p. 683.) |
| 12/15/04 | Physical examination by Defendant for abdominal pain and left sided chest pain. Defendant noted that Plaintiff's pain did not increase with deep breathing, touch or movement and that Plaintiff tolerated exercise. Plaintiff's lungs were clear to auscultation and his heart rate |

was regular.  Plaintiff's blood pressure was 149/93.  Defendant ordered that Plaintiff's blood pressure be checked every two weeks times three.  (Exhibit B, p. 669.)

12/21/04    Physical examination by Defendant for left sided chest pain, which increases with deep breathing and movement.  Defendant notes that Plaintiff claims he "has the same pain 'for years' and this is how thet [sic] diagnosed him with H. pylori???!!!, vague historian wants to attribute every thing to H. pylori infection."  Defendant suggested Tylenol for pain, but said it is bad for the heart and doesn't want to take it even after I told him it is not bad for the heart.  (Exhibit B, p. 660.)

12/27/04    Physical examination by Defendant for bilateral eye pain seeing flashes, was previously checked for this complaint at MBP.  Eyes appear normal.  Plaintiff scheduled for HIV and Hepatitis labs per his request.  (Exhibit B, p. 656.)

1/21/05     Physical examination by Defendant post off site for chest pain and abdominal pain.  Plaintiff claims that he was vomiting blood and having black stools.  Note that "NG aspirate in ER" on the previous day was negative, as was the rectal exam.  No blood in stool.  (Exhibit B, p. 642.)

1/26/05     Physical examination by Defendant noting that Plaintiff had been referred by R.N. for same LLQ pain, and claims of vomiting and passing blood in stool.  Note that Plaintiff was sent to hospital few days prior for same, but that Plaintiff's gastric lavage was negative for occult blood, and that his rectal exam was normal.  Discussed test results with Plaintiff.  (Exhibit B, p. 642.)

2/2/05      Progress note by Defendant indicating that Plaintiff's blood pressure is a little high when stressed and normal other times.  Ordered blood pressure checks every two weeks x 4.  (Exhibit B, p. 634.)

2/7/05      Physical examination by Defendant for rash under armpits, as well as acidity in stomach that radiates to chest.  Defendant prescribed Maalox as needed, as well as Mycolog cream.  (Exhibit B, p. 631.)

2/23/05     Progress note by Defendant indicating that Plaintiff's HIV test was negative.  (Exhibit B, p. 623.)

- 8 -

| | |
|---|---|
| 3/21/05 | Progress note by Defendant indicating that Plaintiff had a normal IVP on 10/31/00, a normal CT abdomen and pelvis with contrast on 9/18/02, and a normal ultrasound for gall bladder on 3/14/03. Defendant spoke to Radiology at Marquette General Hospital, and was told that if IBD [Inflammatory Bowel Disease] was severe it might show on the 9/18/02 CT, but that it would not show up if not severe. Defendant indicated that he planned to ask for a colonoscopy. (Exhibit B, p. 604.) |
| 4/11/05 | Physical examination by Defendant post offsite visit to hospital. Defendant notes that Myoview stress test was negative, that endoscopy showed gastritis, and that colonoscopy revealed hemorrhoids, but was otherwise normal.  Defendant noted that Plaintiff "wants to argue every thing and he had MI [myocardial infarction] and GI bleeding." Defendant explained to Plaintiff that he did not have a heart attack, but Plaintiff was not convinced and left the room saying that Defendant was an animal doctor.  (Exhibit B, p. 577.) |
| 4/12/05 | Progress note by Defendant indicating that the report of MGH Dr. Strom stated that Plaintiff had gastritis, internal hemorrhoids and anxiety.  The report stated that Plaintiff had not suffered a MI [myocardial infarction].  Defendant stated that he planned to order Prilosec and Anusol cream.  (Exhibit B, p. 574.) |
| 4/18/05 | Physical examination by Defendant for complaints of left sided body pain and constipation.  Plaintiff complaining that the Prilosec was not helping his stomach.  Prescribed Metamucil and switched Prilosec back to Zantac.  (Exhibit B, p. 568.) |
| 5/12/05 | Physical examination by Defendant for complaint of left sided chest pain.   No abnormalities found as a result of the examination. Prescribed Tylenol as needed.  (Exhibit B, p. 556.) |
| 6/17/05 | Progress note by Defendant noting that he would not reorder Mycolog cream because Plaintiff had eaten it a few weeks ago, before gagging and screaming that he had chest pain and needed to go to the emergency room.  Plaintiff was admitted to the hospital, but his work up was negative.  (Exhibit B, p. 506.) |
| 6/22/05 | Physical examination by Defendant in response to Plaintiff swallowing a faucet knob.  An x-ray was scheduled for 6/27/05. (Exhibit B, p. 487-488.) |

In response to Defendant's motion for summary judgment, Plaintiff claims that he has been continually denied testing and treatment for H. pylori.  However, as alleged by Plaintiff in his complaint, he received antibiotic treatment for H. pylori prior to his transfer to LMF.  Moreover, the record reveals that Defendant ordered a stool test for H. pylori on June 29, 2004.  The results of that test were negative, as noted in the July 9, 2004, progress note.  Therefore, Plaintiff did not receive treatment for H. pylori, because he no longer tested positive for that problem.

Plaintiff also claims that Defendant refused to reorder his prior medications and special diet, which included snack bags.  However, progress notes show that on January 21, 2004, when Plaintiff was on a regular diet with an evening snack, he weighed 186 pounds, which showed a 6 pound weight gain as a result of adding an evening snack.  The R.N. recommended discontinuing the evening snack because Plaintiff's weight was deemed to be at the high end of his ideal body weight.  (Exhibit B, p. 37.)  On March 29, 2004, Plaintiff requested a reflux diet with three snacks per day.  (Exhibit B., p. 32.)  On May 3, 2004, Plaintiff again requested a change in diet, and was placed on a regular diet.  (Exhibit B, p. 90.)  On August 9, 2005, Plaintiff again requested a reflux diet.  However, it was noted that Plaintiff's weight was stable on a regular diet and that Plaintiff did not take his Zantac regularly.  Moreover, it was noted that most people with gastroesophageal reflux disease (GERD) do not need a therapeutic diet, but should just avoid foods that increase their symptoms.  Plaintiff was given information on how to decrease his symptoms and was encouraged to take his medication.  (Exhibit B, p. 458.)  As noted by Defendant in his brief, such entries in the medical record clearly demonstrate that Plaintiff's dietary needs were addressed.

Plaintiff further contends that on September 16, 2004, Defendant disregarded the finding that Plaintiff's stool contained blood.  However, contrary to this assertion, the record shows

that Defendant ordered a stool test for occult blood to be performed the following week.  Moreover, after Plaintiff's stool tested positive for occult blood, Defendant ordered an H. pylori test to be done on October 5, 2004, which was found to be negative on October 14, 2004.

Plaintiff claims that when he was hospitalized on January 20, 2005, the doctor at Marquette General Hospital indicated that he could not provide proper treatment without a colonoscopy being performed.  However, the record shows that Defendant planned to ask for a colonoscopy for Plaintiff on March 21, 2005.  Plaintiff actually underwent both an endoscopic examination of the upper digestive tract and a colonscopy examination of the lower digestive tract on April 4, 2005.  (Exhibit B, pp. 840-841.)  As noted above, the record further shows that on April 11, 2005, Defendant reviewed the results of Plaintiff's colonoscopy, which showed hemorrhoids, but was otherwise normal.

Finally, Plaintiff claims that he has a "possible heart condition" and has been denied proper testing and treatment.  However, as noted by Defendant in his brief in support of the motion for summary judgment, Plaintiff was given a Adenosine Myoview Stress Test on April 4, 2004.  The report of the test noted:  no evidence of ischemia by ST analysis, normal EKG, and normal hemodynamic response to Adenosine.  (Exhibit B, pp. 917-918.)  Based on the test results, it was determined that Plaintiff was not suffering from a cardiac condition.  The undersigned notes that the record contradicts Plaintiff's assertions that he was repeatedly denied needed tests and treatment.  Rather, the record shows that Defendant ordered numerous medications and tests in an attempt to treat Plaintiff's continuing symptoms.  As noted previously, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are

- 11 -

not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996).

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant's Motion for Summary Judgment.  Accordingly, it is recommended that Defendant's Motion for Dismissal and/or Summary Judgment (Docket #14) be granted and that this case be dismissed in its entirety.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley                         
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   October 6, 2006

- 12 -